IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACY SHELTON and<br>DOUGLAS J. SHELTON,<br><br>      Plaintiffs,<br><br>vs.<br><br>APEX SURGICAL, LLC n/k/a OMNI<br>LIFE SCIENCE, INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. CIV-08-01087-HE<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Plaintiffs Stacey and Douglas Shelton sue defendant Apex Surgical L.L.C. for injuries resulting from the failure of a hip replacement device designed, manufactured, and sold by Apex and implanted in Ms. Shelton.

In June 2003, Ms. Shelton underwent hip replacement surgery performed by Dr. Thomas Tkach, M.D., during which one of Apex's hip replacement devices was implanted. In January 2008, an alignment pin in the device failed, causing a modular joint to separate. Ms. Shelton underwent hip revision surgery to remove the failed device and has spent multiple months in recovery and rehabilitation.

Ms. Shelton alleges that, in addition to pain and suffering and medical expenses, she has suffered other injuries as a result of the hip implant failure. Prior to the device failure Ms. Shelton had been diagnosed with breast cancer and had surgeries related to that disease. She alleges that, because of the hip implant failure, she had to delay cancer-related treatments and reconstruction. Further, as a result of the hip implant failure, Ms. Shelton states she was

Case 5:08-cv-01087-HE   Document 90   Filed 11/13/09   Page 2 of 11

forced to use a walker and that the use of it caused additional injuries to her chest wall. Ms. Shelton also claims she has lost income/profits that she would have received in her work as an independent consultant for Arbonne International.

Defendant has moved for summary judgment as to plaintiff's claims generally. Plaintiff has moved for partial summary judgment as to the strict liability products claim and her request for punitive damages.

### Summary Judgment Standard

Summary judgment should be granted where — in light of the pleadings, discovery materials, and any affidavits — there is no "genuine issue" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c)(2). The court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000).

Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Where the nonmoving party bears the burden of proof at trial, as the plaintiff does in this case, he cannot rely on his pleadings to defeat summary judgment;

instead, he must put forth evidence sufficient to create a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Nevertheless, the moving party must demonstrate its entitlement to judgment as a matter of law.

## **Breach of Warranty Claims**

Plaintiffs' petition alleges that the defendant made express as well as implied warranties regarding the hip implant device. Pl.'s Pet. ¶ 33. Defendant claims that plaintiffs' breach of warranty claims are barred by the statute of limitations. Title 12A O.S. § 2-725 provides, in part:

> (1) An action for breach of any contract for sale must be commenced within five (5) years after the cause of action has accrued. . . .
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Here, the sale of the hip replacement occurred on June 17, 2003. Plaintiffs filed their petition over five years later on July 22, 2008.

To the extent that plaintiffs' claims are based on an alleged breach of implied warranty, the court concludes those claims are barred by the indicated statute of limitations. Plaintiffs' petition can reasonably be read to assert claims for breach of the implied warranty of merchantability and of the implied warranty of fitness for a particular purpose, 12A O.S. §§ 2A-212 and 2A-213, respectively. Claims for breach of those warranties fall squarely under the five-year statute of limitations and are barred.

To the extent that plaintiffs' claims involve breach of an express warranty of future performance, the court concludes that those claims are not barred. Section 2-725 provides an exception to the general rule (that a cause of action accrues on tender of delivery) in situations "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." In those situations, "the cause of action accrues when the breach is or should have been discovered." *Id.*

Plaintiff Stacey Shelton testified in deposition that Dr. Tkach told her that the replacement hip she was receiving was a "30-year hip." S. Shelton Dep. 101:8, June 17, 2009. Plaintiffs contend that, because Dr. Tkach is an agent of Apex, Dr. Tkach's representation should be imputed to Apex as an express warranty of future performance. Apex argues that Dr. Tkach was not its agent.

An agency relationship exists "if two parties agree that one is to act for the other, or the conduct the parties is such that it demonstrates the willingness of one to act for the other." Haworth v. Central Nat. Bank of Oklahoma City, 769 P.2d 740, 743 (Okla. 1989). "The existence of an agency relationship based on actual authority can arise by express authorization or by implied authorization." Bayless v. Christie, Manson & Woods Inter., Inc., 2 F.3d 347, 352 n.6 (10th Cir. 1993). Plaintiffs offer evidence that Dr. Tkach served as a consultant to Apex and that he was a member of the "design team" responsible for the hip implant at issue here. Further, plaintiffs' evidence suggests that Dr. Tkach was a shareholder of defendant and that he received a salary at times, a percentage of total sales of the hip implants, stock options, and a portion of the cash buyout received when Apex was

acquired by OMNI Life Sciences, Inc., in 2005. There is also evidence suggesting that, in certain respects, defendant relied on Dr. Tkach and other surgeons to market the devices for it. While the question is close, the court concludes the proffered evidence of Dr. Tkach's work with the hip implant device and of his relationship with the company, viewed cumulatively, is sufficient to create a justiciable question as to whether Dr. Tkach was acting as an agent of defendant at the time of the particular representation. As a result, summary judgment is inappropriate as to plaintiff's "future performance" warranty claim.

Defendant also moves for summary judgment on plaintiffs' misrepresentation claims. The parties appear to agree that the only potential statements supporting liability are those made by Dr. Tkach to Ms. Shelton. Defendant argues that those statements cannot be imputed against Apex because Dr. Tkach was not its agent. The court's conclusion that a justiciable question exists as to the agency issue also precludes summary judgment for the defendant on the plaintiffs' misrepresentation claims.

## Punitive Damages

Defendant has moved for summary judgment insofar as plaintiffs seek punitive damages. At the same time, plaintiffs have moved for partial summary judgment on the same issue, suggesting that the evidence supporting punitive damages is so clear that judgment as a matter of law should be entered for them.

Title 23 O.S. § 9.1 provides that punitive damages may be awarded in various circumstances. The least exacting circumstance, from a plaintiff's standpoint, is where the

"jury finds by clear and convincing evidence that . . . [t]he defendant has been guilty of reckless disregard for the rights of others."[1]

Plaintiffs assert defendant should be liable for punitive damages based on their repeated statements that defendant "knew of the defect" or the like. For this conclusion, they rely principally on a "risk analysis" document produced by defendant, which plaintiff asserts shows defendant knew the pin in question would fail and its conduct was therefore reckless. The document shows nothing of the kind. The document lists 20 or so features of the device which could <u>potentially</u> fail and identifies the testing and followup done as to each of them. If anything, it is evidence of due diligence on the part of the company in assessing the risks of the device before manufacturing it. It plainly does not establish defendant knew of any defect in the product. Indeed, and more important for present purposes, it does not even support a permissible inference to that effect.

Plaintiffs also argue that defendant's conduct after it learned of failures of the device warrants punitive damages. They suggest that evidence that defendant continued to market the device after receiving notice of the <u>first</u> failure is somehow proof of evil motive or intent, but they do not dispute defendant's evidence the first two reported failures involved persons situated outside the intended scope of use of the product. They do not dispute defendant's evidence that, upon receipt of notice of the third failure — the first one arguably involving use of the device within recommended parameters — defendant acted promptly and appropriately to follow up via investigation and other steps.

---

[1] *Section 9.1 also provides for the possibility of punitive damages in two other situations involving intentional or malicious conduct by the defendant.*

The other evidence offered (or sought) by plaintiff does nothing to provide any other or additional basis for punitive damages.[2]

Even taking the evidence in the light most favorable to plaintiffs, the court concludes no evidence has been offered sufficient to create a justiciable question as to a right to punitive damages.

## Lost Profits

Defendant argues that plaintiffs' claims for lost profits/income are too speculative to be recoverable. Oklahoma law allows for the recovery of anticipated lost profits if it can be "established with reasonable certainty that profits would have been made had the contract not been breached." Florafax Int'l, Inc., v. GTE Mkt. Res., Inc., 933 P.2d 282, 292 (Okla. 1997). A plaintiff satisfies this burden "by demonstrating with 'sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered." Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1178 (10th Cir. 2008) (emphasis in original) (quoting Florafax, 933 P.2d at 292). Once it is clear that lost profits have been suffered because of the breach, "it is proper to let the jury decide what the loss is from the best evidence the nature of the case admits." Florafax, 933 P.2d at 296.

In the present circumstances (i.e. on motion for summary judgment), the question is whether plaintiff can offer <u>any</u> evidence on which the jury might properly base a damages

---

[2]*Plaintiff has filed a motion seeking additional financial information presumably showing defendant's motive to market the device recklessly.*

7

determination for lost profits. Hence it is particularly ambitious for defendant to seek summary judgment as to that issue.

Stacey Shelton testified that her injuries caused by the failure of the hip implant and the resulting rehabilitation adversely affected her work with Arbonne International. Arbonne employs a multilevel marketing structure in which salespersons are compensated not only for the sales they make, but also for the sales of other persons they introduce to the company. Within the company, salespersons climb through different levels based on their own sales and the sales of those beneath them. Prior to her injury, Ms. Shelton had become a "regional vice president" entitling here to a certain level of compensation and perks. Ms. Shelton contends that she was on track to reach the next level of "national vice president" where her compensation would have increased significantly. However, as result of the failure of her hip implant, Shelton testified that her sales dropped and that she was not able to stay ahead of other salespersons competing for the same positions and, as a result, fell to the lower position of "area manager." While it is conceivable that Ms. Shelton's testimony as to her own lost profits may, at some point, get too speculative for admissibility, she has offered at least some evidence upon which a jury determination might conceivably be based. Considering the evidence in the light most favorable to the plaintiffs,[3] a justiciable question exists as to whether Ms. Shelton has suffered lost profits as a result of defendant's alleged breach.

---

[3]*That Stacey Shelton's testimony as to her lost profits is, in whole or in part, in the nature of opinion testimony does not necessarily render it inadmissible. See the 2000 comments to Fed.R.Evid. 701 as to "lost profits" testimony by a business owner.*

### Chest Injuries

Defendant contends that the plaintiffs have failed to establish that the chest pain suffered by Ms. Shelton was caused by the failure of her hip implant or that she will need future surgeries to repair those chest injuries. Ms. Shelton's claimed injury is of the sort that requires expert testimony for the proof of causation. Christian v. Gray, 65 P.3d 591, 601-02 (Okla. 2003) ("Where an injury is of a nature requiring a skilled and professional person to determine the cause and the extent thereof, the scientific question presented must necessarily be determined by testimony of skilled professional persons"); Reed v. Scott, 820 P.2d 445, 449-50 (Okla. 1991) (requiring an expert to determine whether "injuries will result, with a reasonable certainty, in future pain and suffering, permanent injury, and future medical expenses"). Plaintiffs contend that the expert requirement is satisfied here by the testimony of Dr. Beverly Talbert, M.D., who was the physician treating Ms. Shelton's breast cancer and related problems. The court disagrees. Dr. Talbert's testimony does nothing more than acknowledge that Ms. Shelton complained of chest pain to her and that Ms. Shelton reported that the pain arose when she began using a walker following the revision of her hip replacement. Even taken in the light most favorable to the plaintiffs, Dr. Talbert's testimony cannot reasonably be construed as an opinion on the cause of Ms. Shelton's chest injury. The court concludes that the proffered evidence is insufficient to create a justiciable question as to whether Ms. Shelton's chest injuries were caused by the failure of the hip implant at issue here.

### Strict Products Liability/Design Defect Claim

Plaintiffs move for summary judgment on their strict products liability/design defect claims. To prevail on this claim, plaintiffs must establish: (1) the product was defective, (2) the product was dangerous to an extent not contemplated by an ordinary consumer, (3) the defect existed when it left the possession and control of the manufacturer, and (4) the defect proximately caused Plaintiffs' injuries. Ahren v. Ford Motor Co., 340 F.3d 1142, 1145 (10th Cir. 2003). The court concludes that numerous issue of fact remain on these claims precluding summary judgment.

Apex's expert has opined that the hip implant at issue was "state of the art" and free from defects. Edward Cheal, one of the principal engineers involved in the design and development of the hip implant at issue, described numerous testing and certification processes that the hip implant was put through, including FDA approval, and opined that the device was "state of the art" at the time it was placed on the market. Cheal Aff. ¶¶ 4-9, Oct. 2, 2009. Although not conclusive, "state of the art" evidence is admissible on the issue of whether a product is defective. Smith v. Minster Machine Co., 669 F.2d 628, 633 (10th Cir. 1982); Allen v. Minnstar, Inc., 8 F.3d 1470, 1478 (10th Cir. 1993). In light of this evidence, a justiciable question exists regarding plaintiffs' strict products liability/design defect claims.

## Conclusion

Plaintiffs' motion for partial summary judgment [Doc. #53] is DENIED. Defendant's motion for summary judgment [Doc. #56] is GRANTED as to plaintiffs' request for punitive

damages, their claims related to Ms. Shelton's chest injuries, and their claims for breach of implied warranties.  The motion is DENIED as to plaintiffs' claims for breach of express warranty, misrepresentation, or lost profits.  In light of the disposition of the punitive damages claim, plaintiff's motion for additional financial records [Doc. #86] is STRICKEN as MOOT.

    **IT IS SO ORDERED**.

    Dated this 13th day of November, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE